## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

---

**BRENNA REALI,**

**Plaintiff**

**v.**                                                   **CA. NO.**

**EXPERIAN INFORMATION SOLUTIONS, INC.**

**and**

**TRANS UNION, LLC.**

**and**

**METLIFE HOME LOANS, a division of METLIFE BANK, N.A.**

**Defendants**

---

## INTRODUCTION

1.     This is an action for actual, statutory and punitive damages, costs and attorney's fees brought by the plaintiff, Brenna Reali, pursuant to the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq . The Plaintiff brings this action for Defendants wrongful furnishing, verification and reporting of inaccurate information in consumer reports relating to her. In addition, Plaintiff alleges that Defendant MetLife Home Loans violated 33 M.R.S.A. §551 by failing to discharge its mortgage in a timely fashion upon pay off by the Plaintiff and her ex-husband.

## JURISDICTION

2.     The jurisdiction of this Court is conferred by 15 U.S.C. §1681(p), 28 U.S.C. §1331 and 28 U.S.C. §1367. Venue is proper as all relevant events occurred in this District and Defendants were doing business in Maine during all relevant times.

## PARTIES

3.      The Plaintiff is a natural person and resident of the State of Maine.  She is a "consumer" as defined by 15 U.S.C. §1681a(c).

4.      Upon information and belief, Defendant Experian Information Solutions, Inc. ("Experian") is a corporation authorized to do business in the State of Maine through its registered agent's office.

5.      Upon information and belief, Experian is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f).  Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

6.      Upon information and belief, Experian disburses such consumer reports to third parties under contract for monetary compensation.

7.      Upon information and belief, Trans Union, LLC ("Trans Union") is a corporation authorized to do business in the State of Maine through its registered agent's office.

8.      Upon information and belief, Trans Union is a "consumer reporting agency", as defined in 15 U.S.C. §1681a(f).  Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

9.      Upon information and belief, Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

10.     Upon information and belief, Metlife Home Loans, a division of MetLife Bank, N.A. ("MetLife") is a mortgage lender doing business in the State of Maine.

11.     At all times relevant to this action, Defendant MetLife was a furnisher of consumer

information to Defendants Experian, TransUnion and other consumer reporting agencies, and furnished information relating to Plaintiff and a mortgage loan she had with MetLife.

## FACTS

12.     Plaintiff's mortgage loan, originally with First Horizon Home Loan Corporation, was assigned from Mortgage Electronic Registration Systems ("MERS") as nominee for First Horizon Loan Corporation to Metlife on December 15, 2008.

13.     On March 10, 2009, MetLife filed a civil action against Plaintiff and her ex-husband (the co-debtor on the loan) in the Portland Civil Court seeking to foreclose its mortgage.

14.     On March 27, 2009 Plaintiff and her ex-husband sold the subject property and paid off the MetLife loan in full.

15.     MetLife did not pursue the foreclosure action and eventually it was dismissed.

16.     MetLife did not obtain a foreclosure judgment and there was no foreclosure sale.

17.     MetLife never filed a discharge of its mortgage after the March 27, 2009 pay off.

18.     MetLife never delivered a release of the mortgage to Ms. Reali.

19.     In March 2011, the Plaintiff reviewed her credit reports and saw that MetLife was reporting the foreclosure.

20.     Experian was listing the MetLife account as "Foreclosed."

21.     TransUnion was listing the MetLife account as "Foreclosure, Collateral Sold."

22.     Ms. Reali immediately disputed these erroneous entries to Experian and Trans Union pursuant to the FCRA.

23.     Upon information and belief the credit reporting agencies forwarded the disputes to Met Life pursuant to FCRA procedures.

24. MetLife failed to correct the errors.

25. On March 22, 2011 both TransUnion and Experian sent the Plaintiff the results of their reinvestigations verifying the information and making no change to the credit reports.

26. Ms. Reali continued to dispute directly to MetLife and on May 25, 2011 sent a fax reiterating her dispute and attaching relevant documents.

27. Nonetheless MetLife did not correct the errors.

28. On June 22, 2011 Ms. Reali was denied credit with American Express.  American Express stated that its decision was based on that fact that her Experian report included a "foreclosure, repossession, bankruptcy, garnishment of wage, or a defaulted student loan."  Other than the erroneous MetLife account, Ms. Reali had none of the listed entries on her report.

29. In July 2011, Ms. Reali disputed the MetLife tradeline to Experian and Trans Union again.

30. Upon information and belief the credit reporting agencies forwarded the disputes to MetLife pursuant to FCRA procedures.

31. As a result of the second dispute, Experian updated the information from "Foreclosed" to "Foreclosure Proceedings Started."

32. Trans Union responded to the second dispute by sending a new credit report but did not address the dispute or send results of its reinvestigation.  The new credit report made no change to the MetLife entry which still read "Foreclosure/Collateral Sold."

33. On October 16, 2011, the Plaintiff was denied credit from First Third Bank based on the Trans Union report.

34. On October 28, 2011 Plaintiff's counsel sent a demand letter to MetLife.

35. MetLife did not respond to the letter.

36.     On November 2, 2011 the Plaintiff reviewed her Trans Union report again.  The MetLife entry still read "Foreclosure/Collateral Sold."

37.     The Plaintiff disputed the MetLife account with TransUnion a third time and, on November 29, 2011, TransUnion reported that, as a result of the dispute, it was deleting the MetLife account.

38.     Upon information and belief, MetLife furnished inaccurate information relating to the Plaintiff's mortgage, hereinafter the "MetLife tradeline," to one or more consumer reporting agencies including Defendants Experian and Trans Union.

39.     As set forth above, Plaintiff communicated on one or more occasions to Defendant Experian a dispute over the accuracy of its reports on Plaintiff relating to the MetLife tradeline and provided it with supporting documentation.

40.     Upon information and belief, Defendant Experian notified MetLife of Plaintiff's disputes regarding the tradeline and requested MetLife to investigate and verify or correct the information.

41.     Upon information and belief, MetLife responded to Experian's request for verification of the tradeline by wrongly furnishing inaccurate information.

42.     After Plaintiff's dispute, Defendant Experian wrongly and inaccurately reported the disputed tradeline.

43.     As set forth above, Plaintiff communicated on one or more occasions to Defendant Trans Union a dispute over the accuracy of its reports on Plaintiff relating to the MetLife tradeline and provided it with supporting documentation.

44.     Upon information and belief, Defendant Trans Union notified MetLife of Plaintiff's disputes regarding the tradeline and requested MetLife to investigate and verify or correct the information.

45.     Upon information and belief, MetLife responded to Trans Union's request for verification of the tradeline by wrongly furnishing inaccurate information.

46.     After Plaintiff's dispute, Defendant Trans Union wrongly and inaccurately reported the disputed tradeline.

47.     Defendants willfully or, in the alternative, negligently failed to comply with the requirements of the FCRA, and in doing so violated Plaintiff's rights.

48.     Plaintiff applied for but was denied credit after the Defendants' violations alleged herein, and the Defendants' violations were each a substantial cause in the denial of credit to Plaintiff on such occasions.

49.     Defendants' violation of Plaintiff's rights under the FCRA caused Plaintiff mental anguish, damage to her credit reputation and economic damages.

50.     Defendants are each liable to Plaintiff for the greater of actual damages or statutory damages and, for willful violations, punitive damages against each Defendant as provided under the FCRA.

51.     Plaintiff has retained the undersigned attorneys to pursue these claims and is obligated to them for attorney's fees and expenses.

52.     After receiving Plaintiff's notice of the inaccuracy and within the two years preceding the filing of this action, Experian and Trans Union each prepared and published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate derogatory MetLife tradeline.

53.     Experian and Trans Union each received Plaintiff's multiple disputes, but in each case wholly and entirely failed to conduct the reinvestigations required by law.  Instead, they merely "parroted" the information dictated by MetLife.

54.     Upon information and belief, Plaintiff alleges that on one or more occasions Experian and Trans Union each forwarded Plaintiff's disputes to MetLife.  Upon information and belief, MetLife was provided notice of Plaintiff's disputes and despite this notice, it failed and refused to investigate and correct its inaccurate reporting.

55.     During the time that MetLife has reported the derogatory history on the Plaintiff's account, the account has been subject to an unresolved bona fide dispute by the Plaintiff.  Despite this fact, MetLife has not consistently included a notice in the MetLife reporting that the Plaintiff had disputed such information and continued to report inaccurate information to Experian and Trans Union.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### §15 U.S.C. 1681e(b)
### (Experian, and Trans Union)

56.     The Plaintiff realleges and incorporates paragraphs 1 through 55 above as if fully set out herein.

57.     Experian and Trans Union each violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files they published and maintain concerning the Plaintiff.

58.     As a result of the conduct, actions and inactions of Experian and Trans Union, the Plaintiff suffered actual damages including, without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

59.     Experian and Trans Union's conduct, actions and inactions were willful, rendering

them each liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Experian and Trans Union were each negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

60.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C.  §§1681n and o.


### COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### §15 U.S.C. 1681i
### (Experian and Trans Union)

61.     Plaintiff realleges and incorporates paragraphs 1 through 60 above as if fully set out herein.

62.     Experian and Trans Union each violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the Plaintiff's credit files.

63.     Experian and Trans Union each violated 15 U.S.C. §1681i(a)(2) on multiple occasions by failing to provide notification of the Plaintiff's disputes to MetLife and by failing to include all relevant information regarding the Plaintiff's disputes.

64.     Experian and Trans Union each violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by Plaintiff.

65.     Experian and Trans Union each violated 15 U.S.C. §1681i(a)(5)(A) on multiple occasions by failing to promptly delete the disputed inaccurate item of information from Plaintiff's credit files or modify the MetLife reporting information upon an accurate reinvestigation.

66.     As a result of the conduct, actions and inactions of Experian and Trans Union, the Plaintiff suffered actual damages including, without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

67.     Experian and Trans Union's conduct, actions and inactions were willful, rendering them each liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Experian and Trans Union were each negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

68.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n and o.

## COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### §15 U.S.C. 1681s-2(b)
### (MetLife)

69.     Plaintiff realleges and incorporates paragraph 1 through 68 above as if fully set out herein.

70.     Within two years prior to the filing of this suit, by example only and without limitation, MetLife violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes of the MetLife reporting after receipt of notice of such disputes from Experian and Trans Union.

71.     Within two years prior to the filing of this suit, by example only and without limitation, MetLife violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies with Plaintiff's disputes.

72.     Within two years prior to the filing of this suit, by example only and without limitation, MetLife violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing

the MetLife representation within Plaintiff's credit file with Experian and Trans Union and by failing to accurately and completely report the results of a lawful investigation to each other credit reporting agency.

73.    As a result of the conduct, actions and inactions of MetLife, the Plaintiff suffered actual damages including, without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

74.    MetLife's conduct, action and inaction were willful, rendering MetLife liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, MetLife was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

75.    The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from MetLife in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n and o.

**COUNT FOUR: VIOLATION OF 33 M.R.S.A. §551: NEGLECT TO DISCHARGE
(MetLife)**

76.    Plaintiff realleges and incorporates paragraphs 1 through 75 above as if fully set out herein.

77.    Ms. Reali's mortgage assigned from Mortgage Electronic Registration Systems ("MERS") as nominee for First Horizon Loan Corporation to Metlife on December 15, 2008.

78.    Ms. Reali sold the home on March 10, 2009 and the loan was paid in full on that date.

79.    MERS filed a satisfaction of mortgage on April 2, 2009.

80.    Met Life never filed a discharge.

81.    MetLife never delivered a release to Ms. Reali.

82.    Pursuant to 33 M.R.S.A. §551, a mortgage may only be discharged by the mortgagee.

MERS was never the mortgagee for the Realis' loan.

83.     MetLife, as the mortgagee of the subject loan, is in violation of  33 M.R.S.A. §551 for failing to file "['w]ithin 60 days after full performance of the conditions of the mortgage… a valid and complete release of mortgage together with any instrument of assignment necessary to establish the mortgagee's record ownership of the mortgage."

84.     MetLife is in further violation of 33 M.R.S.A. §551 by failing to send, ['w']ithin 30 days after receiving the recorded release of the mortgage from the registry of deeds … the release by first class mail to the mortgagor's address as listed in the mortgage agreement or to an address specified in writing by the mortgagor for this purpose."

85.     As such, Ms. Reali is entitled to statutory damages of  $5,500 plus court costs and reasonable attorney's fees to enforce the liability imposed under 33 M.R.S.A. §551.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for her attorneys fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted

**Brenna Reali,**
By her attorney:

/s/ Andrea Bopp Stark
Andrea Bopp Stark
Molleur Law Office
419 Alfred Street
Biddeford, ME  04005-3747
207-283-3777

andrea@molleurlaw.com


Elizabeth A. Miller
Attorney at Law
*Pro hac vice* pending
125 Summer Street, Suite 1030
Boston, MA 02110
Telephone: (617) 478-4914
elizabethamiller@comcast.net

Date:  January 10, 2012